## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re | Case No.:  17-11274 |
| FINTUBE, LLC, | Chapter 11 |
| Debtor. | |

## DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR IN POSSESSION TO (I) OBTAIN POST-PETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) GRANT LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS, (III) USE CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363, 503 AND 507 OF THE BANKRUPTCY CODE, (IV) PROVIDE ADEQUATE PROTECTION AND (V) SCHEDULE FINAL HEARING

### CONCISE STATEMENT OF RELIEF REQUESTED

Fintube, LLC, debtor and debtor-in-possession in the above-captioned case ("Debtor"), files this motion ("Motion") for entry of interim and final orders pursuant to Bankruptcy Code Sections 105(a), 361, 362(d), 363(c) and (m), 503(b) and 507(b), and Bankruptcy Rules 4001(b) and 6003, requesting the following relief:

(i)     Authorizing use of Cash Collateral (defined below), in which BOKF, NA d/b/a Bank of Oklahoma ("BOK") has an interest;

(ii)     Conditioning the use of Cash Collateral;

(iii)     Providing BOK with replacement liens, superpriority administrative claims and other adequate protection for Debtor's use of Cash Collateral including modifying the automatic stay;

(iv)     Authorizing the Debtor to obtain postpetition financing from BOK in an amount up to $800,000;

(v)     Providing BOK liens in substantially all of the Debtor's prepetition and postpetition assets to secure the postpetition financing;

(vi)    Providing BOK a priority administrative claim to provide additional security for postpetition financing; and

(vii)   Provide other covenants and restrictions to protect the interests of BOK in the postpetition lending, including modification of the automatic stay.

In support of this Motion, Debtor states:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b)(2)(A), (D), (G) and (M) and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought hereby are Sections 105(a), 361, 362(d), 363(c) 364(c) and (d) and 507 of title 11, United States Code ("Bankruptcy Code"), and Rules 4001 and 6003 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

## PRELIMINARY STATEMENT

### Fintube, LLC

3.      Debtor, Fintube, LLC ("Fintube"), is a Delaware limited liability company engaged in the business of engineering and manufacturing welded, extended surface tubing and designing and fabricating heat recovery systems for a worldwide market. Fintube has been in business for over fifty years. Its primary facilities are located in Tulsa, Oklahoma.

**Case Status**

4.      This case was commenced by the filing of a Voluntary Petition on June 27, 2017 (Doc. No. 1). Debtor continues to operate its business as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. The United States Trustee has not appointed an Official Committee of Unsecured Creditors ("Committee") in this case. No request has been made for the appointment of a trustee or examiner.

**BOK Debt**

A.      BOK and the Debtor are parties to the loan documents described on Schedule 1 attached hereto (collectively, the "Prepetition BOK Loan Documents").

B.      BOK asserts that pursuant to the Prepetition BOK Loan Documents, including without limitation, all Obligations of the Debtor to BOK of any kind or nature under the Prepetition BOK Loan Documents (the "Outstanding Obligations") are secured by a first priority, properly perfected blanket security interest (the "Prepetition Liens") in substantially all of the Debtor's assets as of the Petition Date, including without limitation,  the real property constituting the Debtor's primary facilities located at 555 W. 41st Street, Tulsa, Oklahoma; all inventory, chattel paper, accounts, equipment, and general intangibles; all bank and depository accounts at BOK and all funds on deposit therein; all proceeds, products, accounts, and other rights arising of the of a sale, lease, consignment or other disposition of any of the foregoing property; and all records and data related to any of the forgoing property (the "Prepetition Collateral");

C.      BOK asserts that the Debtor is truly and justly indebted to BOK as under the Prepetition BOK Loan Documents, and that as of the Petition Date, such liability to BOK was at least $4,095,109 (the "Prepetition Indebtedness");

D.      BOK asserts that by reason of the Prepetition BOK Loan Documents, (i) the Prepetition Indebtedness is secured by valid, properly perfected and enforceable liens and security interests granted by the Debtor to BOK upon and in the Prepetition Collateral; (ii) the liens held by BOK securing the Prepetition Indebtedness are senior to all other security interests in the Prepetition Collateral; and (iii) the claims, liens and security interests held by BOK may not be avoided or set aside;

E.      For the purposes of interim consideration of this Motion only, with full reservation of rights to subsequently contest the same, Debtor does not contest BOK's assertions as set forth in the preceding sub-paragraphs.

## Use of Cash Collateral

5.      Presently, and during the pendency of this case, a part of the prepetition Collateral is, and will constitute "cash collateral," as defined in Section 363(a) of the Bankruptcy Code (the "Cash Collateral").

6.      In order to protect the interests of the Debtor and its creditors, and to preserve the value of the Collateral and the Debtor's business for the benefit of all constituencies in this case, it is necessary that Debtor continue its operations without interruption.  Use of Cash Collateral is essential for Debtor to continue and to operate its business in order preserve and enhance the value of its assets as it moves forward with this chapter 11 case.

7.      Debtor seeks immediate authority to use the Cash Collateral for working capital and ordinary course business.  BOK as the holder of the first priority lien in and to the Collateral, including Cash Collateral, has consented to Debtor's use of Cash Collateral on the terms set forth herein and in the proposed Order, a copy of which is attached hereto, marked Exhibit "A" and incorporated herein by reference.

8.    Without immediate use of Cash Collateral, Debtor and its bankruptcy estate, as well as its creditors, customers and other constituent parties in interest, will suffer immediate and irreparable harm.

9.    Accordingly, Debtor submits that its continued use of Cash Collateral should be approved on an interim basis immediately, and on a final basis after notice and a hearing.

### Postpetition Financing

10.    Given the Debtor's current financial condition, the Debtor is unable to operate by using only Cash Collateral.  Moreover, the Debtor is unable to obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense. Financing on a postpetition basis is not available without the Debtor granting, pursuant to Bankruptcy Code § 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in §§ 503(b) and 507(b) of the Bankruptcy Code, and securing such indebtedness with security interests and liens upon BOK's Prepetition Collateral.

11.    By virtue of the fact that BOK is secured by all, or substantially all, of the assets of the Estate, Debtor will not be able to obtain postpetition financing from another source without granting liens and mortgages as security therefor which would prime the interests of BOK, to which BOK does not consent.  BOK is agreeable to furnish the Debtor with postpetition financing on the terms and conditions and with the protections of its interests as provided in the proposed Order attached hereto as Exhibit "A."

### BASIS FOR RELIEF

### Use of Cash Collateral with Adequate Protection Is Authorized

12.    Section 363(c)(2) of the Bankruptcy Code restricts a debtor's use of a secured creditor's cash collateral. Specifically, that provision provides, in pertinent part, as follows:

The trustee may not use, sell, or lease cash collateral . . . unless—

(A) each entity that has an interest in such cash collateral consents; or

(B)     the court, after notice and a hearing, authorizes such use, sale,

or lease in accordance with the provisions of this section [363]. 11 U.S.C. § 363(c)(2).

13.     Further, Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." *Id.* § 363(e).

14.     Debtor satisfies the requirements of subsections (c)(2) and (e) of Section 363 of the Bankruptcy Code and should be authorized to use Cash Collateral. Subject to provision of adequate protection as described herein and in Exhibit "A," BOK has consented to the use of the Cash Collateral. Accordingly, the Court should authorize Debtor to use Cash Collateral under Section 363(c)(2) of the Bankruptcy Code and provide BOK adequate protection for the use thereof as described in Exhibit "A."

## The Debtor is Authorized to Obtain Credit

15.     Sections 364(b) and (c) and (d) authorize the Debtor to obtain credit and provide adequate protection, administrative expense priorities and modification of the automatic stay if the Debtor is unable to obtain unsecured credit.

16.     Here, Debtor is unable to obtain unsecured credit on any basis and the obtaining of additional financing, in addition to the Debtor's use of Cash Collateral, is essential to the continued operation of the Debtor and preservation of the value of the Estate for the benefit of the parties in interest.

**Interim Approval for Use of Cash Collateral and Postpetition Financing Is Required**

17.     The Court may grant interim relief in respect of a motion filed pursuant to Section 363(c) of the Bankruptcy Code where, as here, interim relief is "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Bankruptcy Rule 4001(b)(2).

18.     Debtor and its estate will suffer immediate and irreparable harm if the interim relief requested herein is not granted promptly. Debtor has insufficient cash to fund operations without use of Cash Collateral and without the postpetition financing requested herein.

19.     Accordingly, Debtor has an immediate need to use Cash Collateral and obtain postpetition financing on an interim basis to continue the operation of its business, maintain its facilities to meet payroll, and perform its customer contracts, all of which is required to preserve and maintain the value of Debtor's assets for the benefit of all parties in interest.

20.     Accordingly, for the reasons set forth above, prompt entry of the Interim Order is necessary to avert immediate and irreparable harm to the Debtor's estates and is consistent with, and warranted under, subsections (b)(2) of Bankruptcy Rule 4001.

**Request for Final Hearing**

21.     Pursuant to of Bankruptcy Rule 4001(b)(2), Debtor requests that the Court set a date that is no longer than thirty (30) days from the entry of an Interim Order hereon as a final hearing for consideration of entry of the Final Order.

**REQUEST FOR WAIVER OF STAY**

22.     Debtor further seeks a waiver of any stay of the effectiveness of the Interim Order on this Motion. Pursuant to Bankruptcy Rule 6004(h), "An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the use of Cash Collateral is

essential to prevent irreparable damage to Debtor's operations, value and ability to reorganize. Accordingly, Debtor submits that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## REQUEST FOR RELIEF

Upon the foregoing, Debtor requests the Court, on limited and shortened notice, grant interim relief approving use of Cash Collateral and approving the postpetition financing and providing adequate protection on the liens, priorities and other protections of BOK's interest in the Cash Collateral and respecting the postpetition financing as provided in Exhibit "A," and set a final hearing on this Motion, and upon Notice and an opportunity for a hearing thereafter, enter a Final Order approving use of cash collateral and postpetition financing and providing liens, priorities and other protections of BOK's interests as requested herein on a final basis.

Debtor also requests the Court waive the stay provided by Bankruptcy Rule 6004(h) and grant such further relief to which Debtor may be entitled.

DATED the 27th day of June, 2017.

DOERNER, SAUNDERS, DANIEL & ANDERSON, L.L.P.

By:    */s/ Sam G. Bratton II*
       Sam G. Bratton II, OBA No. 1086
       J. Patrick Mensching, OBA No. 6136
       Williams Center Tower II
       Two West Second St., Suite 700
       Tulsa, Oklahoma 74103
       Telephone (918) 582-1211
       Facsimile (918) 591-5360
       sbratton@dsda.com
       pmensching@dsda.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of June, 2017, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF Registrants in the above case.  A separate certificate as to other service will be filed.

/s/ *Sam G. Bratton II*
Sam G. Bratton II

4294509v1

SCHEDULE 1
Prepetition BOK Loan Documents

Second Amended and Restated Credit Agreement amount Fintube, LLC as Borrower, Fintube Holdings, LLC, and certain subsidiaries, as guarantors and BOKF, N.A. d/b/a Bank of Oklahoma as Lender, dated April 27, 2015.

First Amendment to the Second Amended and Restated Credit Agreement dated May 6, 2016.

Real Estate Mortgage Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing for Fintube, LLC and BOKF, N.A. d/b/a Bank of Oklahoma, dated July 29, 2011.

First Amendment to Real Estate Mortgage Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing dated November 11, 2015.

Second Amendment to Real Estate Mortgage, Security Agreement Assignment of Leases and Rents, Financing Statement and Fixture Filing dated May 6, 2016.

Amended and Restated Security and Pledge Agreement dated July 29, 2011.

Second Amendment to Amended and Restated Security and Pledge Agreement dated April 27, 2015.

Promissory Note (revolving note) dated May 6, 2016 in the amount of $4 million.

Promissory Note (Term Note 1) dated May 6, 2016 in the amount of $398,571.70.

Promissory Note (Term Note 2) dated May 6, 2016 in the amount of $2,866,999.81.

Promissory Note (Term Note 3) dated May 6, 2016 in the amount of $351,431.70.

Promissory Note (Term Note 5) dated May 6, 2016 in the amount of $1 million.



EXHIBIT
SCHEDULE 1
TO
MOTION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re | Case No.: 17-11274 |
| FINTUBE, LLC, | Chapter 11 |
| Debtor. | |

**INTERIM ORDER AUTHORIZING DEBTOR IN POSSESSION TO (I) OBTAIN POST-PETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) GRANT LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS, (III) USE CASH COLLATERAL PURSUANT TO SECTIONS 105, 361, 362, 363, 503 AND 507 OF THE BANKRUPTCY CODE, (IV) PROVIDE ADEQUATE PROTECTION AND (V) SCHEDULE FINAL HEARING**

Upon the motion (the "Motion") dated June 27, 2017 (Doc. No. __) of debtor and debtor in possession Fintube, LLC ("Fintube" or the "Debtor"),  (a) requesting entry of an order authorizing the Debtor pursuant to Sections 364(c) and 364(d) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") and Rules 2002, 4001(c) and (d) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to, inter alia, (i) obtain post-petition financing (the "DIP Facility") pursuant to the terms of the DIP Loan Documents (as defined below) from its prepetition senior secured lender BOKF, NA dba Bank of Oklahoma ("BOK", and in BOK's capacity as the DIP Facility lender, sometimes referred to as the "DIP Lender"), (ii) grant DIP Lender, pursuant to Bankruptcy Code §§ 364(c) and 364(d), first priority lien in all of the Debtor's currently owned and after-acquired property to secure the Debtor's obligations under the DIP Facility; and (iii) grant DIP Lender  priority in payment with respect to the obligations incurred in connection with the DIP Facility over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), other than as described below; (b) seeking this Court's authorization to use any Cash Collateral (defined below) in which BOK has an interest, pursuant to Bankruptcy Code § 363(c) and to

**EXHIBIT**

A

TO MOTION

provide adequate protection, pursuant to Bankruptcy Code §§ 361, 362(d), 363(c) and (m), 503(b) and 507(b) to BOK; (c) seeking a preliminary hearing on shortened and limited notice (the "Preliminary Hearing") on the Motion to consider entry of an interim order pursuant to Bankruptcy Rule 4001 (the "Interim Order") authorizing the Debtor to borrow under the Post petition Financing the amounts set forth in the Approved Budget (as defined below), upon the terms and conditions set forth in the Interim Order pending the Final Hearing referred to below; and (d) requesting that a final hearing (the "Final Hearing") be scheduled by this Court to consider entry of a final order (the "Final Order") authorizing on a final basis, inter alia, the DIP Facility and use of the Cash Collateral; and

FINDING THAT due and sufficient notice of the Motion under the circumstances having been given; and the Preliminary Hearing on the Motion having been held before this Court on June___, 2017; and upon the record of this Chapter 11 Case, including without limitation, the records made at the Preliminary Hearing ; and with the provisions of Paragraphs E-J below to constitute acknowledgements, admissions, stipulations, and representations by the Debtor and BOK; and this Court having found good and sufficient cause appearing therefor;

Based on the record established at the Preliminary Hearing, the Court hereby makes the following findings of fact and conclusions of law:[1]

A.      Filing Date. On June 27, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief with this Court under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case");

---

[1] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

2

B.     <u>Debtor in Possession.</u> The Debtor is continuing in possession of its property, and operating and managing its businesses, as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code;

C.     <u>Notice.</u> The Debtor gave due and sufficient notice of the request for interim relief in the Motion pursuant to the Bankruptcy Rules, Local Bankruptcy Rules, and the Order of the Court  shortening and limiting notice thereof;

D.     <u>Jurisdiction; Venue.</u> This Court has jurisdiction over the Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2), upon which this Court has constitutional authority to enter a final judgment.

E.     <u>Prepetition First Priority Secured Debt with BOK.</u>  BOK and the Debtor are parties to the loan documents described on Schedule 1 attached hereto (collectively, the "Prepetition BOK Loan Documents").

F.     <u>Stipulations.</u> In requesting the DIP Facility under the DIP Loan Documents (defined below), the Debtor permanently, immediately, and irrevocably acknowledge, represent, stipulate, and agree, that:

(a)     BOK asserts that pursuant to the Prepetition BOK Loan Documents, including without limitation, all Obligations of the Debtor to BOK of any kind or nature under the Prepetition BOK Loan Documents (the "Outstanding Obligations") are secured by a first priority, properly perfected blanket security interest (the "Prepetition Liens") in substantially all of the Debtor's assets as of the Petition Date, including without limitation, real property generally located at West 41st Street South and South Elwood Avenue in Tulsa, Oklahoma; all inventory, chattel paper, accounts, equipment, and

3

general intangibles; all bank and depository accounts at BOK and all funds on deposit therein; all proceeds, products, accounts, and other rights arising of the of a sale, lease, consignment or other disposition of any of the foregoing property; and all records and data related to any of the forgoing property (the "Prepetition Collateral");

(b)    BOK asserts that the Debtor is truly and justly indebted to BOK as under the Prepetition BOK Loan Documents, and that as of the Petition Date, such liability to BOK was at least $4,095,109 (the "Prepetition Indebtedness");

(c)    BOK asserts that by reason of the Prepetition BOK Loan Documents, (i) the Prepetition Indebtedness is secured by valid, properly perfected and enforceable liens and security interests granted by the Debtor to BOK upon and in the Prepetition Collateral; (ii) the liens held by BOK securing the Prepetition Indebtedness are senior to all other security interests in the Prepetition Collateral; and (iii) the claims, liens and security interests held by BOK may not be avoided or set aside;

(d)    BOK asserts that as of the date hereof, the Debtor has no claims, defenses or causes of action against BOK with respect to, in connection with, related to, or arising from the Prepetition BOK Loan Documents.

(e)    For the purposes of interim consideration of the Motion only, Debtor does not contest BOK's assertions in the preceding sub-paragraphs (a) through (d).    Debtor reserves the right to subsequently contest the same but agrees that any such action to contest these issue must be taken by the Debtor on or before the entry of a Final Order on the Motion .

G.    <u>Cash Collateral</u>.    For purposes of this Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in

which BOK has liens, security interests, or other interests whether existing on the Petition Date or hereafter created. The Debtor requires use of Cash Collateral to operate its business. Without the use of Cash Collateral, the Debtor will not be able to meet its cash requirements for working capital needs, which will result in an immediate shutdown of the Debtor's businesses. BOK does not consent to the use of Cash Collateral except on the terms and for the purposes specified herein.

H.    <u>Purpose and Necessity of Financing</u>. Given the Debtor's current financial condition, the Debtor is unable to operate by using only Cash Collateral Moreover, the Debtor is unable to obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense. Financing on a post-petition basis is not otherwise available without the Debtor granting, pursuant to Bankruptcy Code § 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in §§ 503(b) and 507(b) of the Bankruptcy Code, other than as described below, and securing such indebtedness and obligations with the security interests in and the liens upon the property described below pursuant to §§ 364(c) and 364(d) of the Bankruptcy Code.

I.    <u>Good Faith</u>. Based on the record presented to this Court by the Debtor, it appears that the DIP Facility and use of Cash Collateral have been negotiated in good faith and at arm's-length between the Debtor and BOK, and any credit extended and loans made to the Debtor pursuant to the Interim Order shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, § 364(e) of the Bankruptcy Code.

J.    <u>Good Cause and Consideration</u>. Based on the record before this Court, it appears that the terms of this Order, including, without limitation, the terms of the DIP Facility and use

of Cash Collateral, are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The permission granted herein to use Cash Collateral and obtain the DIP Facility and obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtor. This Court concludes that entry of this Order is in the best interests of the Debtor's estates and creditors as its implementation will, among other things, allow for the flow of supplies and services to the Debtor necessary to sustain the Debtor's business operations and enhance the Debtor's prospects for a successful completion of the Chapter 11 Cases.

Based upon the foregoing findings and conclusions, and upon the record made before this Court in this Chapter 11 Case, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED DETERMINED AND DECREED** that:

1. <u>Motion Granted</u>. The Motion is granted on an interim basis, subject to the terms and conditions set forth in this Order.

2. <u>Authorization</u>. The Debtor is expressly authorized and empowered to (i) obtain the post-petition financing via the DIP Facility, use the Cash Collateral, and perform its obligations strictly pursuant to the provisions of this Order; (ii) perform its obligations under the Prepetition BOK Loan Documents as such documents are, or may be, amended and modified pursuant to the terms of this Interim Order, or any subsequent Final Order; and (iii) enter into such other agreements, instruments and documents as may be necessary or required to evidence the obligations to DIP Lender and BOK to consummate the terms and provisions of the Motion and this Order and to evidence perfection of the liens and security interests to be given to DIP Lender and BOK (the Prepetition BOK Loan Documents as modified by this Order and Schedule 2 attached hereto, shall hereinafter be referred to as the "DIP Loan Documents"). DIP Lender

agrees to advance funds under the DIP Facility , as outlined  by this Interim Order and Schedule 2 attached hereto.. The borrowing(s) made under the revolving credit facility maintained under the DIP Loan Documents (the "DIP Facility") and all other indebtedness and obligations incurred on or after the Petition Date with respect to loans, advances and any other indebtedness or obligations, contingent or absolute pursuant to the Interim Order and the DIP Loan Documents which may now or from time to time hereafter be owing by the Debtor to DIP Lender (including principal, accrued and unpaid interest, and fees costs and expenses, including without limitation attorney's fees and expenses) are referred to herein as the "DIP Indebtedness," and, together with the Prepetition Indebtedness, as the "Indebtedness." The Debtor and BOK may enter into any nonmaterial amendments of or modification to the DIP Loan Documents without the need of further notice and hearing or order of this Court.

3.    <u>Borrowing; Use Cash Collateral</u>. Subject to the Approved Budget (as defined in paragraph 17 below), and the terms and conditions of this Interim Order, any Final Order and the DIP Loan Documents, (a) BOK hereby consents to the Debtor's limited use of Cash Collateral, and (b) DIP Lender will provide the DIP Facility, on a revolving basis in amounts up to $800,000, in accordance with the terms of the DIP Loan Documents.

4.    <u>Application of Proceeds</u>.

(a)    Proceeds or payments received by BOK and/or DIP Lender (other than adequate protection payments set forth herein) shall be applied as follows: (x) first, to the outstanding balance on the DIP Facility, first to all accrued and accruing interest, next to all fees, costs and expenses, and then to principal, and (y) next to interest on accrued and accruing Prepetition Indebtedness

(b)     The automatic stay under § 362(a) of the Bankruptcy Code shall be, and it hereby is, modified to the extent necessary to permit BOK to retrieve, collect and apply payments and proceeds in respect of the Prepetition Collateral and the DIP Facility Collateral (defined below) in accordance with the terms and provisions of this Order and the DIP Loan Documents.

5.     <u>Interest, Fees, Costs and Expenses</u>. The Indebtedness shall bear interest at the applicable non-default rates set forth in the DIP Loan Documents and the Prepetition BOK Loan Documents, and no event of default occurring prior to the Petition Date under the Prepetition BOK Loan Documents (including the filing of the Chapter 11 Cases) shall cause interest to be charged at the default rate. (DIP Lender and BOK shall be entitled to recover all of their reasonable attorney's fees and other professional fees as well as all costs and expenses incurred in connection with the Indebtedness to the extent provided in the DIP Loan Documents and Pre-Petition BOK Loan Documents, as applicable. In consideration for providing the Post-Petition Financing, DIP Lender shall be paid all fees specified in the DIP Loan Documents in accordance with the terms therein for such payment.)

6.     <u>Termination of the DIP Facility</u>. DIP Lender's obligation to provide the DIP Facility shall terminate (except as DIP Lender may otherwise agree in writing in its sole discretion) automatically three (3) business days following BOK's filing of the notice with the Bankruptcy Court pursuant to the terms set forth in paragraph 14(b) below, and all Indebtedness shall be immediately due and payable in cash upon the earliest to occur of the following (the "Termination Event"):

(i)     the date of final indefeasible payment and satisfaction in full in cash of the Indebtedness;

8

(ii)    the effective date of any confirmed plan of reorganization in the Chapter 11 Cases;

(iii)    the consummation of the sale or other disposition of all or substantially all of the assets of the Debtor;

(iv)    the occurrence of any material breach by the Debtor of this Order (including, but not limited to, the Debtor's failure to adhere to the Approved Budget as set forth in ordering paragraph 17 of this Order or violation of any of the covenants provided for in ordering paragraph 19 of this Order), or under any of the DIP Loan Documents;

(v)    the dismissal of the Chapter 11 Case or the conversion of the Chapter 11 Case into a case under Chapter 7 of the Bankruptcy Code;

(vi)    upon and following the entry of an order authorizing the appointment of a trustee or an examiner with enlarged powers (beyond those set forth in § 1106(a)(3) and (4) of the Bankruptcy Code), relating to the operation of the business of the Debtor without the prior written consent of DIP Lender (which consent may be withheld or, if given revoked, by DIP Lender in its sole discretion), or if any Debtor applies for, consents to, or acquiesces in, any such appointment without the prior written consent of DIP Lender;

(vii)    the Interim Order is stayed, reversed, vacated, amended or otherwise modified in any material respect without the prior written consent of DIP Lender (which consent may be withheld in its sole discretion);

(viii)    the Court enters an order granting a party relief from the automatic stay with respect to any portion of the Prepetition Collateral or the DIP Facility Collateral (defined below); this or any other Court enters an order or judgment in the Chapter 11 Case modifying, limiting, subordinating or avoiding the priority of any Indebtedness or the perfection, priority or validity of BOK's or DIP Lender's Prepetition or DIP Facility Liens (defined below) or imposing, surcharging or assessing against BOK and DIP Lender or their claims or any Prepetition or DIP Facility Collateral (defined below) any fees, costs or expenses, whether pursuant to § 506(c) of the Bankruptcy Code or otherwise;

(ix)    by September 30, 2017 if the Court has not entered an order establishing procedures relating to the conduct of a sale or auction of the Debtor or substantially all of the Debtor's assets;

(x)    by November 30, 2017 if the Court has not entered an order approving the sale Debtor of the Debtor or substantially all of the Debtor's assets;

(xi)    by December 31, 2017 if the Debtor has not closed on the sale approved by the Court.

7.    <u>Liens to Secure the DIP Indebtedness.</u> As security for the DIP Indebtedness, DIP Lender is hereby granted, to the extent of the DIP Indebtedness incurred by the Debtor, the following security and liens (the "DIP Facility Liens") in all currently owned or hereafter acquired property and assets of the Debtor of any kind or nature, including without limitation, all collateral of the kinds, categories, and types described in the Prepetition Collateral, which are hereby incorporated by reference, all real property owned by the Debtor, and the proceeds, products, rents and profits of all of the foregoing, except respecting Debtor Debtor's recovery rights under Chapter 5 of the Bankruptcy Code (all of the foregoing, the "DIP Facility Collateral"), subject only to the payment of the Carve Out (as defined in paragraph 15):

(a)    Pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first priority senior security interest in and lien upon all pre-and post-petition property noted above of the Debtor, whether existing on the Petition Date or thereafter acquired, that, as of the Petition Date, is not subject to valid, perfected and non-avoidable liens;

(b)    Pursuant to Section 364(c)(3) of the Bankruptcy Code, a perfected security interest in and lien upon all pre-and post-petition property noted above of the Debtor, whether now existing or hereinafter acquired, that is subject to valid, perfected and unavoidable liens in existence as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code, immediately junior in priority to such valid, perfected and unavoidable liens;

(c)    Pursuant to Section 364(d)(1) of the Bankruptcy Code, a perfected first priority senior priming lien (the "Priming Liens") on all of the DIP Facility Collateral,

including the Prepetition Collateral, which shall be senior to all other security interests and liens in property of the Debtor's estates; and

(d)     In addition, neither the Prepetition Liens nor the DIP Facility Liens shall be subject to subordination to any other liens, security interests or claims under Section 510 of the Bankruptcy Code or otherwise.

8.     <u>Adequate Protection Liens</u>. As adequate protection of BOK's interests in the Prepetition Collateral, including use of the Cash Collateral, pursuant to §§ 361, 363 and 552(b) of the Bankruptcy Code, BOK is hereby granted valid, binding, enforceable and perfected additional and replacement liens (the "BOK Senior Adequate Protection Liens"), to the extent that such liens existed as of the Petition Date, in all property of the Debtor's estates, including the DIP Facility Collateral, to the extent of any decrease in the value of BOK's interests in the Prepetition Collateral occurring subsequent to the Petition Date, with such decrease in value to include decreases resulting from the Debtor's use (if any) of Cash Collateral, the granting of priming liens under the Bankruptcy Code, the depreciation, use, sale, loss, decline in market price of the Prepetition Collateral or otherwise. The BOK Senior Adequate Protection Liens shall enjoy the same validity and extent as the liens BOK held on the Petition Date. The BOK Senior Adequate Protection Liens are subject only to (i) the Carve-Out (as defined in paragraph 15); (ii) the DIP Facility Liens; and (iii) any recoveries under Chapter 5 of the Bankruptcy Code.

9.     <u>Section 507(b) Priority Administrative Claims</u>. If, notwithstanding the provision of the BOK Senior Adequate Protection Liens, such BOK Senior Adequate Protection Liens do not provide adequate protection of BOK's valid, enforceable and unavoidable interests in the Prepetition Collateral, BOK shall (i) have a claim allowed under § 507(a)(2) of the Bankruptcy Code (the "507(b) Claim"), and, except with respect to being subordinated to the Carve Out,

11

such 507(b) Claim shall be entitled to priority over every other claim allowable under such §

507(a)(2); and (ii) notwithstanding anything herein to the contrary, be entitled to seek further

adequate protection of its interests and such further relief as is consistent therewith.

10.    Superpriority Claims. Subject to the Carve-Out described in ordering paragraph

15 below, all of the DIP Indebtedness shall have the highest administrative priority under §

364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and expenses of

administration of any kind, including those specified in, or ordered pursuant to §§ 105, 326, 330,

331, 503(b), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise

(whether incurred in the Chapter 11 Case or any successor case), and shall at all times be senior

to the rights of the Debtor, any successor trustee or estate representative in the Chapter 11 Cases

or any successor case (the "Superpriority Claims"). Except for the Carve-Out, nothing in this

Order or the Approved Budget (as defined below) shall constitute the consent by DIP Lender or

BOK to the imposition of any costs or expense of administration or other charge, fees, liens,

assessment or claim (including, without limitation, any amounts set forth in the Approved

Budget) against DIP Lender or BOK, their claims or collateral (including the Prepetition

Collateral and the DIP Facility Collateral) under § 506(c) of the Bankruptcy Code or otherwise

be subject in any way to the equitable doctrine of "marshalling" or any similar doctrine.

11.    Perfection of DIP Facility Liens and Adequate Protection Liens. The DIP Facility

Liens shall be, and they hereby are, deemed duly perfected and recorded under all applicable

federal or state or other laws as of the date hereof. The BOK Senior Adequate Protection Liens

shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or

state or other laws to the extent that such liens in the Prepetition Collateral existed on the Petition

Date. No notice, filing, mortgage recordation, possession, control, certificate of title, further

order, landlord or warehousemen lien waivers or other third party consents or waivers or other act, shall be required to effect such perfection; provided, however, that notwithstanding the provisions of § 362 of the Bankruptcy Code, (i) DIP Lender may, at its sole option, file or record or cause the Debtor to obtain any such landlord or warehousemen lien waivers or other third party consents or waivers or execute, file or record, at the Debtor's expense, any such UCC financing statements, notices of liens and security interests, mortgages and other similar documents as DIP Lender may require, and (ii) DIP Lender may require the Debtor to deliver to DIP Lender any chattel paper, instruments or securities evidencing or constituting any DIP Facility Collateral, and the Debtor are directed to cooperate and comply therewith. If DIP Lender, in its sole discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or waivers or cause to be filed or recorded any such notices, financing statements, mortgages or other documents with respect to such security interests and liens, or if DIP Lender, in accordance with the DIP Loan Documents or this Order, elects to take possession of any DIP Facility Collateral, all such landlord or warehouse lien waivers or other third party consents or waivers, financing statements or similar documents or taking possession shall be deemed to have been filed or recorded or taken in these Chapter 11 Case as of the commencement of this Chapter 11 Case but with the priorities as set forth herein. DIP Lender may (in its sole discretion), but shall not be required to, file a certified copy of this Order in any filing or recording office in any county or other jurisdiction in which the Debtor has real or personal property and such filing or recording shall be accepted and shall constitute further evidence of DIP Lender's interest in the DIP Facility Collateral.

12.    Waiver. The Debtor and its estate (and any party in interest acting on behalf of the Debtor) hereby irrevocably waive, and are barred from asserting or exercising any right (a)

13

without BOK's or DIP Lender's prior written consent (which may be withheld in their sole discretion) or (b) without prior indefeasible payment and satisfaction in full of the Indebtedness: (i) to grant or impose, or request that the Court grant or impose, under § 364 of the Bankruptcy Code or otherwise, liens on or security interests in any DIP Facility Collateral, which are pari passu with or senior to the DIP Facility Liens or the BOK Senior Adequate Protection Liens; (ii) to return goods pursuant to § 546(g) of the Bankruptcy Code to any creditor of the Debtor or to consent to any creditor taking any setoff against any of such creditor's prepetition indebtedness based upon any such return pursuant to § 553(b)(1) of the Bankruptcy Code or otherwise; (iii) to seek a surcharge of the Prepetition Collateral or the DIP Facility Collateral under § 506(c) of the Bankruptcy Code; or (iv) to modify or affect any of the rights of BOK or DIP Lender under this Order or any DIP Loan Documents by any order entered in the Chapter 11 Cases or any successor case.

13.     Sale Out of the Ordinary Course of Business. The Debtor may not propose a sale of any of its assets outside the ordinary course of business unless (a) DIP Lender provides its written consent to such sale; or (b) the proposed sale provides BOK the protections and rights of a Secured Party under § 363 of the Bankruptcy Code or as otherwise provided by this Order.

14.     Modification of Automatic Stay; Other Remedies.

(a)     Except as set forth in subparagraph (b) of this paragraph, which governs any action of BOK and DIP Lender to foreclose on their liens on any Prepetition Collateral or DIP Facility Collateral or to exercise any other default-related remedies (other than those specifically referenced in the next sentence), the automatic stay pursuant to § 362 of the Bankruptcy Code is hereby vacated as to BOK and DIP Lender to permit them to perform in accordance with, and exercise, enjoy and enforce its rights,

14

benefits, privileges and remedies pursuant to this Interim Order and the DIP Loan Documents without further application or motion to, or order from, the Court. BOK and DIP Lender from the exercise, enjoyment and enforcement of any of such rights, benefits, privileges and remedies. BOK and DIP Lender are hereby granted leave to, among other things, (a) receive and apply payments to interest on the Indebtedness from collections on and proceeds of the Prepetition Collateral and the DIP Facility Collateral in the manner specified in this Interim Order and the DIP Loan Documents, (b) file or record any financing statements, mortgages or other instruments or other documents to evidence the BOK Senior Adequate Protection Liens or the DIP Facility Liens, (c) to charge and collect any interest, fees, costs and expenses and other amounts accruing at any time under the DIP Loan Documents or this Order as provided therein, (d) to give the Debtor any notice provided for in any of the DIP Loan Documents or this Order, and (e) upon the occurrence of a Termination Event, and without application or motion to, or order from the Court or any other court, (i) terminate the DIP Facility and the DIP Loan Documents, (ii) declare all Indebtedness immediately due and payable, and (iii) revoke the Debtor's right, if any, under this Order and/or the other DIP Loan Documents to use Cash Collateral.

(b)     Upon the occurrence of a Termination Event and ten (10) business days after BOK or DIP Lender have filed with the Bankruptcy Court, and served by hand delivery, facsimile or overnight mail on counsel to the Debtor, counsel to any official committee appointed in this case, if any, and the Office of the United States Trustee, an affidavit identifying any act which gave rise to the occurrence of a Termination Event, the automatic stay under § 362 of the Bankruptcy Code shall be deemed vacated and

modified with respect to BOK and DIP Lender for the purpose of exercising all of their rights and remedies under the Prepetition BOK Loan Documents, the DIP Loan Documents, this Interim Order or applicable law, including foreclosing or otherwise enforcing their liens on any or all of the Prepetition Collateral and the DIP Facility Collateral, and BOK and DIP Lender shall be and hereby are authorized, in their sole discretion, to take any and all action and remedies which they deem appropriate to effectuate these rights and remedies; provided that the Debtor, any Committee, and/or the United States Trustee have not obtained an order of this Court (following proper notice to BOK, DIP Lender and their counsel and a hearing) re-imposing the automatic stay upon BOK and DIP Lender within such ten day notice period. Subject to the Debtor's right in the foregoing sentence, the Debtor shall cooperate with BOK and DIP Lender in connection with any enforcement action by such parties by, among other things, (i) providing access to its premises to representatives of BOK and DIP Lender, (ii) providing BOK and DIP Lender or their designees access to the Debtor's books and records, (iii) performing all other obligations set forth in the Prepetition BOK Loan Documents, this Final Order and/or the other DIP Loan Documents, and (iv) taking reasonable steps to safeguard and protect the Prepetition Collateral and the DIP Facility Collateral until BOK and DIP Lender can make adequate provision to protect and safeguard the Prepetition Collateral and the DIP Facility Collateral, and the Debtor shall not otherwise interfere or encourage others to interfere with BOK's or DIP Lender's enforcement of their rights. The date that the Automatic Stay shall been lifted in accordance with the terms of this Final Order shall be referred to as the "Stay Relief Date".

15.     Carve-Out. The DIP Liens, Superpriority Claims, and BOK Senior Adequate Protection Liens shall be subject to right of payment of the following expenses (the following subparagraphs, collectively, the "Carve-Out," and all amounts payable in connection therewith, the "Carve-Out Amounts"):

A.     unpaid post petition fees and expenses of the Clerk of the Court and statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930;

B.     unpaid post petition fees and expenses of professional persons of the Debtor, which are retained by an order of the Court pursuant to Bankruptcy Code sections 327, 328, 363, or 1103(a) (the "Professionals") but only to the extent (i) not otherwise paid from retainers, or any professional expense escrow account established by the Debtor; (ii)   that unencumbered funds are not otherwise available to pay such amounts and (iii) that such amounts are within the amounts budgeted by the Debtor.

16.     Cash Collection Procedures. From and after the date of the entry of this Order, all collections and proceeds of any DIP Facility Collateral or services provided by the Debtor and all other cash or cash equivalents which shall at any time come into the possession or control of the Debtor, or to which the Debtor shall become entitled at any time shall be deposited in the same bank accounts into which the collections and proceeds of the Prepetition Collateral were deposited under the Prepetition BOK Loan Documents (or in such other accounts as are designated by BOK or DIP Lender from time to time and/or as are approved by order of the Court authorizing the Debtor to maintain bank accounts and cash management systems which order is in form and substance acceptable to BOK and DIP Lender) and shall be applied against the DIP Indebtedness as provided in this Interim Order and the DIP Loan Documents.

17.     <u>Budget; Use of Cash Collateral and DIP Facility Proceeds.</u>

(a)      Attached as Exhibit A hereto and incorporated herein by reference is a budget (which has been approved by DIP Lender) setting forth by line item and grouped by category all projected cash receipts and cash disbursements for the time period from the Petition Date through September 1, 2017 (the "Interim Budget"). The Interim Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) to which BOK and DIP Lender agree in their sole discretion (each such additional budget, a "Supplemental Approved Budget"). The aggregate of all items approved by DIP Lender and BOK in the Interim Budget and any and all Supplemental Approved Budgets (acceptable to BOK and DIP Lender in their sole discretion) shall constitute an "Approved Budget."

(b)      The Debtor may use Cash Collateral and the proceeds of the DIP Facility exclusively to pay for the expenses incurred by Debtor as provided for in the Approved Budget. Debtor represents and warrants that (a) the expenditures set forth in the Approved Budget constitute all of the Debtor's projected expenses during the period of the Approved Budget, and (b) the Debtor reasonably believe that the Cash Collateral and the sums to be advanced by DIP Lender pursuant to the DIP Facility will be sufficient to pay all of the expenses set forth in the Approved Budget. The Debtor shall use commercially reasonable best efforts to ensure that its sales and cash receipts shall not be less than as set forth in the Approved Budget and the Debtor's expenses shall not exceed those set forth in the Approved Budget, in all cases subject to the Approved Cash Receipts Variance and the Approved Disbursements Variance (all as defined below, and

18

collectively, the "Approved Variances"). As used herein, the Approved Variances include, and are defined and calculated as follows:

(i)    "<u>Approved Cash Receipts Variance</u>" means (i) a negative variance of less than 25% between Debtor's actual cash receipts and Debtor's projected cash receipts measured commencing as of the end of the first week covered by the Approved Budget; (ii) a negative variance of less than 20% between Debtor's actual cash receipts and Debtor's projected cash receipts measured cumulatively from the commencement of the Chapter 11 Cases concluding with the end of the second week covered by the Approved Budget; (iii) a negative variance of less than 15% between Debtor's actual cash receipts and Debtor's projected cash receipts measured cumulatively from the commencement of the Chapter 11 Cases concluding with the end of the third week covered by the Approved Budget; and (iv) a negative variance of less than 10% between Debtor's actual cash receipts and Debtor's projected cash receipts measured cumulatively from the commencement of the Chapter 11 Cases concluding with the end of any week covered by the Approved Budget during which the variance is being calculated beyond the third week;

(ii)    "<u>Approved Disbursements Variance</u>" means a positive variance of less than 10% between Debtor's actual disbursements and Debtor's projected disbursements, on an aggregate basis for each category of line items as shown in an Approved Budget, and (B) less than 10% of the Debtor's actual disbursements and Debtor's projected disbursements, on a cumulative basis, each measured commencing as of the end of the second week covered by the Approved Budget and each week thereafter for both (i) the two-week period concluding with the week during which the variance is being calculated, and (ii) cumulatively from the commencement of the Chapter 11 Cases concluding with the week during which the variance is being calculated.

18.    <u>Financial Reporting</u>.  In addition to all of the financial reports the Debtor are required to provide to BOK and DIP Lender pursuant to the Prepetition BOK Loan Documents, which financial reports the Debtor shall continue to provide to BOK timely in accordance with the Prepetition BOK Loan Documents, the Debtor shall also provide the following reports to DIP Lender and to the Committee (if appointed): (i) no later than the 10th day of each month, a

comparison of the items in the Budget for the preceding month to the Debtor's actual performance that includes a narrative summary of any material variances from the Budget for the preceding month; (ii) on the 1st and 15th day of each month, a detailed report from the Debtor or Debtor's professionals including any investment banker or broker, that summarizes the status of the Debtor's efforts to sell substantially all of its assets as a going concern or similar transactions, which report shall include (x) copies of expressions of interest or letters of intent received by the Debtor from third parties; (y) a summary of the due diligence activities conducted by interested parties; and (z) a time table for execution of definitive agreements with potential parties and the filing of pleadings with the Court seeking approval of the sale; (iii) no later than the 20th day of each month, beginning July 20, 2017, the Debtor's financial statements (including balance sheets, income statements and cash flow statements) for the immediately preceding month; and (iv) the Debtor's monthly operating reports no later than 5:00 p.m. as and when such reports are required to be filed with the Court.

19.    Covenants. The Debtor shall timely comply with all of the covenants set forth in the Prepetition BOK Loan Documents (other than (i) covenants relating to the filing of these Chapter 11 Cases or relating to the financial condition of the Debtor to the extent inconsistent with the terms of this Interim Order or (ii) as modified by this Interim Order. Including attachments hereto), this Interim Order and the DIP Loan Documents.

20.    DIP Lender, BOK's and Debtor's Reservation of Rights; No Waiver. DIP Lender, BOK and Debtor do not waive, and expressly reserve, any and all claims, defenses, rights and remedies they have pursuant to any or all of the Prepetition BOK Loan Documents, the DIP Loan Documents, the Bankruptcy Code and/or other applicable law against each other or any officer, director, employee, agent or other representative of the Debtor. In addition, the rights and

obligations of the Debtor and the rights, claims, liens, security interests and priorities of DIP Lender and BOK arising under this Interim Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Debtor, in its prepetition capacity, under the Prepetition BOK Loan Documents. Notwithstanding anything to the contrary contained in the Interim Order, DIP Lender, BOK, and Debtor reserve the right to seek additional relief from the Court on any issue that may arise in connection with the Chapter 11 Cases.  Notwithstanding the foregoing, Debtor agrees that any claims, defenses, rights or remedies against BOK pursuant to the Prepetition Loan Documents must be asserted on or before the entry of a Final Order or they will be waived.

21.   Order Binding on Successors. The provisions of this Interim Order shall be binding upon and inure to the benefit of DIP Lender, BOK and the Debtor, and their respective successors and assigns (including any trustee or other estate representative appointed as a representative of the Debtor's estates or of any estate in any successor cases). No third parties are intended to be or shall be deemed to be third party beneficiaries of this Order or the DIP Loan Documents, except as set forth in paragraph 15 above regarding the Carve-Out.

23.   No Deemed Control. By consenting to entry of this Interim Order, making advances under the DIP Facility or administering the financing relationship with the Debtor pursuant to the DIP Loan Documents, DIP Lender shall not be deemed to be in control of the Debtor or its operations or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar state or federal statute) with respect to the operation or management of the Debtor.

24.     <u>Continuing Nature of DIP Facility Liens and Claims</u>. Any order dismissing the Chapter 11 Cases under Bankruptcy Code section 1112 or otherwise shall be deemed to provide (in accordance with Bankruptcy Code sections 105 and 349) that (a) the DIP Agent's and DIP Lender's liens and the Adequate Protection Liens and security interests in the DIP Collateral shall continue in full force and effect notwithstanding such dismissal until the DIP Facility obligations are indefeasibly paid and satisfied in full, in cash; and (b) this Court shall retain jurisdiction, to the extent permissible under applicable law, notwithstanding such dismissal, for the purposes of enforcing the DIP Facility Superpriority Claim, the DIP Liens, the Adequate Protection Liens, the Adequate Protection Cash Payment, and the Prepetition Adequate Protection Superpriority Claims.

25.     <u>Safe Harbor</u>. The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the Debtor to obtain credit on the terms and conditions upon which the Debtor and BOK have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under § 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in § 364(e) of the Bankruptcy Code.

26.     <u>Controlling Effect of Order</u>. To the extent any provisions in this Interim Order conflict with any provisions of the Motion, the provisions of this Interim Order shall control. This DIP Lender's continuing commitment to the DIP Facility shall be subject to and conditioned upon entry of a final order on or before August 15, 2017, that is acceptable to DIP Lender in its sole discretion.

27.     <u>Immediate Effect of Order</u>. The terms and conditions of this Order shall be effective and immediately enforceable upon its entry by the Clerk of the Court notwithstanding

any potential application of Bankruptcy Rule 6004(h) or otherwise. Furthermore, to the extent applicable, the notice requirements and/or stays imposed by Bankruptcy Rules 4001(a)(3), 6003(b), and 6004(a) are hereby waived for good and sufficient cause. The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

      28.    <u>Final Hearing</u>. A final hearing with respect to the Motion is scheduled for _____ \_\_\_, 2017 at _____ \_\_.m. (central) (the "Final Hearing") before the Honorable _____, United States Bankruptcy Judge. The Debtor shall promptly mail or otherwise serve copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing and to any other party that has filed a Bankruptcy Rule 2002 request for service and any other party as directed by the Court. Any party in interest objecting to the relief sought at the Final Hearing shall file written objections, before _____ a.m./p.m. (Central time) on _____ \_\_\_, 2017.

# # # END OF ORDER # # #

SCHEDULE 1
Prepetition BOK Loan Documents

Second Amended and Restated Credit Agreement amount Fintube, LLC as Borrower, Fintube Holdings, LLC, and certain subsidiaries, as guarantors and BOKF, N.A. d/b/a Bank of Oklahoma as Lender, dated April 27, 2015.

First Amendment to the Second Amended and Restated Credit Agreement dated May 6, 2016.

Real Estate Mortgage Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing for Fintube, LLC and BOKF, N.A. d/b/a Bank of Oklahoma, dated July 29, 2011.

First Amendment to Real Estate Mortgage Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing dated November 11, 2015.

Second Amendment to Real Estate Mortgage, Security Agreement Assignment of Leases and Rents, Financing Statement and Fixture Filing dated May 6, 2016.

Amended and Restated Security and Pledge Agreement dated July 29, 2011.

Second Amendment to Amended and Restated Security and Pledge Agreement dated April 27, 2015.

Promissory Note (revolving note) dated May 6, 2016 in the amount of $4 million.

Promissory Note (Term Note 1) dated May 6, 2016 in the amount of $398,571.70.

Promissory Note (Term Note 2) dated May 6, 2016 in the amount of $2,866,999.81.

Promissory Note (Term Note 3) dated May 6, 2016 in the amount of $351,431.70.

Promissory Note (Term Note 5) dated May 6, 2016 in the amount of $1 million.

SCHEDULE 2
BOK DIP Facility Additional Terms and Covenants

1.  The mandatory loan repayments due when the aggregate principal amount of the outstanding Advances exceed the Borrowing Base shall be suspended until the earlier of December 31, 2017 or a Termination Event. The suspension of the Borrowing Base limitation as set forth herein may be further modified upon written agreement between the Debtor and the DIP Lender, which shall have the right to agree or not agree to any modification in its sole discretion.

2.  Fintube shall maintain the following at all times: (a) total accounts receivable greater than $600,000.00 (at face value) and (b) total inventory greater than $1,000,000.00 (at cost).

3.  The post maturity rates due under the loan documents shall be suspended until the earlier of December 31, 2017 or a Termination Event.

4.  The loan covenants for the Tangible Net Worth ratio, Current Ratio, and Debt Service Coverage Ratio under the loan documents shall be suspended until the earlier of December 31, 2017or a Termination Event.

5.  Fintube shall provide a report every Monday starting July 3, 2017 which shows the level of accounts receivable (at face value) and the level of inventory (at cost) as of the close of business from the preceding Friday.

6.  Fintube shall be required to maintain all of its bank accounts at BOK.

7.  The amounts due under the DIP Facility shall be due in full no later than December 31, 2017 or a Termination Event.

8.  All amounts advanced under the BOK DIP Facility shall bear interest at a rate of BOK Prime plus 1%.

4298233v1

C:\Users\sbratton\Desktop\Cash Flow 6.20.17

**Fintube Cash Flow Forecast: 6/14/2017**

All columns are Fcst (Forecast).

| Bank | 6/16/2017 | 6/23/2017 | 6/30/2017 | 7/7/2017 | 7/14/2017 | 7/21/2017 | 7/28/2017 | 8/4/2017 | 8/11/2017 | 8/18/2017 | 8/25/2017 | 9/1/2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Opening Cash (Revolver) | (1,025) | (920) | (1,344) | (1,560) | (1,724) | (1,752) | (1,677) | (1,761) | (1,721) | (1,564) | (1,562) | (1,543) |
| Projected Collections | 121 | 23 | 56 | 110 | | 197 | 2 | 163 | 229 | 125 | 125 | 125 |
| Opening Cash | 0 | | | | | | | | | | | |
| Ending Cash | | | | | | | | | | | | |
| **Total:** | (904) | (897) | (1,288) | (1,451) | (1,724) | (1,555) | (1,675) | (1,598) | (1,492) | (1,439) | (1,437) | (1,418) |
| **Cash Requirement** | | | | | | | | | | | | |
| AP - Steel | (16) | (83) | (61) | (126) | (17) | (34) | (65) | (60) | (60) | (60) | (60) | (60) |
| AP - Other | | (137) | (182) | (84) | | | | | | | | |
| Legal Fees | | (50) | | | | | | | | | | |
| Bankruptcy consultant - Clearridge | | | | (6) | (6) | (6) | (6) | (6) | (6) | (6) | (6) | (6) |
| Bankruptcy fees | | | | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) |
| Utilities/ freight | | (2) | | (2) | | (2) | | (2) | | (2) | | (2) |
| Rent | | (25) | | | | (25) | | | | | (25) | |
| Insurance | | | | | | | | | | | | |
| Medical | | (8) | (10) | | | | (10) | | | | (10) | |
| 401K | | | (10) | | | | | | | | | |
| Loan pmt & fees | | | (10) | | | | | | | | | |
| Payroll | | (142) | | (50) | | (50) | | (50) | | (50) | | (50) |
| CP Mgmt Fees | | | | | | | | | | | | |
| Other | | | | | | | | | | | | |
| **Total Requirement** | (16) | (447) | (273) | (273) | (28) | (122) | (86) | (123) | (71) | (123) | (106) | (123) |
| Surplus/deficit | 104 | (424) | (216) | (164) | (28) | 75 | (84) | 40 | 158 | 2 | 19 | 2 |
| Ending Cash (Revolver Debt) | (920) | (1,344) | (1,560) | (1,724) | (1,752) | (1,677) | (1,761) | (1,721) | (1,564) | (1,562) | (1,543) | (1,541) |
| Borrowing Base | 1,449 | 1,449 | 1,126 | 1,126 | 1,126 | 1,126 | 1,126 | 1,126 | 1,126 | 1,126 | 1,126 | 1,126 |
| **Available Bank/Revolver** | 529 | 105 | (434) | (598) | (626) | (551) | (635) | (596) | (438) | (436) | (417) | (416) |

| **Delayed Payments** | 6/16/2017 | 6/23/2017 | 6/30/2017 | 7/7/2017 | 7/14/2017 | 7/21/2017 | 7/28/2017 | 8/4/2017 | 8/11/2017 | 8/18/2017 | 8/25/2017 | 9/1/2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Utilities/ freight | | (55) | | | | | | | | | | |
| Rent | | (15) | (60) | | | | (60) | | | | | |
| Insurance | | | | (60) | | | | (60) | | | | (60) |
| Medical | | (35) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (10) | (10) |
| 401K | | | | | | | | | | | | |
| Loan pmt & fees | | (13) | | (13) | | (13) | | (13) | | (13) | | (13) |
| Severance | | | | | | | | | | | | (60) |
| **Total Delayed Payments** | | (118) | (70) | (83) | (10) | (23) | (70) | (83) | (10) | (23) | (10) | (143) |



EXHIBIT A
Exhibits
PROPOSED TO INTERIM ORDER